## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | | |
|---|---|---|
| **CYNTHIA FAUBER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 6:15-CV-16** |
| | ) | |
| **CAROLYN W. COLVIN[1], Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Cynthia Fauber ("Fauber") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Fauber alleges that the Administrative Law Judge ("ALJ") erred by failing to fully develop the record and by improperly evaluating her credibility. I conclude that the ALJ failed to adequately explain his decision so as to allow for meaningful review. Accordingly, I **RECOMMEND GRANTING IN PART** Fauber's Motion for Summary Judgment (Dkt. No. 11) and **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 14) and **REMANDING** this case for further administrative proceedings.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Fauber failed to demonstrate that she was disabled

---

[1] Carolyn Colvin became the Acting Commissioner of Social Security on February 14, 2013.

1

under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Fauber protectively filed for SSI and DIB on October 27, 2011, claiming that her disability began on February 9, 2008. R. 79, 198–201. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 96–104. ALJ Jeffrey J. Schueler held a hearing on October 15, 2013 to consider Fauber's disability claim, but it was continued to afford Fauber the opportunity to obtain counsel. R. 57–63. The hearing was rescheduled to January 14, 2014 ("the January hearing"). R. 30–56. Fauber was represented by an attorney at the January hearing, which included testimony from Fauber and vocational expert Ashley Wells. R. 30–56.

On April 16, 2014, the ALJ entered his decision analyzing Fauber's claim under the familiar five-step process[3] and denying Fauber's claim for benefits. R. 6–25. The ALJ found that

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of

2

Fauber suffered from the severe impairments of fibromyalgia, obesity, migraine headaches, diabetes mellitus-type II, depressive disorder, obsessive compulsive disorder ("OCD"), panic disorder with agoraphobia, and post-traumatic stress disorder ("PTSD"). R. 11. The ALJ further found that Fauber retained the residual functional capacity ("RFC") to perform sedentary work, but she is restricted to occasionally lifting twenty pounds and frequently lifting and carrying up to ten pounds. The ALJ additionally found that Fauber can frequently balance and push or pull with her bilateral upper extremities; can occasionally stoop, kneel, crouch, and climb ramps and stairs; cannot crawl or climb ladders, ropes, and scaffolds; and should avoid concentrated exposure to extreme heat and cold, wetness, excessive vibration, hazardous or moving machinery, and unprotected heights. The ALJ found that Fauber would be off-task no more than ten percent of the workday; would be absent no more than once per month; and needs a low-stress job, defined as only occasional decision making or changes in work setting. R. 14. The ALJ determined that Fauber could not return to her past relevant work as a graphic designer and administrative clerk (R. 23), but that Fauber could work at jobs that exist in significant numbers in the national economy, such as production worker, production helper, and inspector/tester/sorter.[4] R. 24. Thus, the ALJ concluded that Fauber was not disabled. Id.

---

proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[4] There appear to be some discrepancies regarding the job titles and DOT numbers in the ALJ's opinion (R. 24). DOT number 706.684-030 corresponds with an "Atomizer Assembler," but the ALJ has it listed as a "Production Worker." DOT number 689.687-066 corresponds with a "Rug Cleaner," but the ALJ has it listed as a "Production Helper." Both the "Atomizer Assembler" and the "Rug Cleaner" accommodate the limitations set forth in the ALJ's RFC finding. The third job title listed in the ALJ's opinion, "Inspector, Tester, Sorter," appears to be correct as DOT number 539.485-010 corresponds with "Weight Tester."

3

<u>**ANALYSIS**</u>

**1. Failure to Adequately Address Limitations from Severe Mental Impairments**

The ALJ failed to adequately address the limitations that flow from Fauber's severe

mental impairments of depressive disorder and panic disorder with agoraphobia, "despite

contradictory evidence in the record." See Monroe v. Colvin, __ F.3d. __ (2016), 2016 WL

3349355, at *10 (4th Cir. June 16, 2016). The ALJ noted in his opinion that Fauber received

mental health treatment for depression and anxiety (R. 15), reported panic attacks (R. 16),

exhibited agoraphobia symptoms (id.), was prescribed medication for anxiety and depression

(R. 17), and quit her job due to anxiety (R. 20). The ALJ discussed these symptoms only in the

credibility section, stating:

> In terms of the claimant's alleged mental impairments, the medical
> evidence of record does not support her subjective allegations. Her
> mental symptoms significantly worsened around the alleged onset
> date, but they improved by mid-2008. Her mental symptoms were
> generally stable on medication after that. **The claimant reported**
> **some general depression and anxiety intermittently after she**
> **stabilized in 2008, but these were not described as severe.** These
> are accounted for by the mental limitations in the residual
> functional capacity.

R. 21 (emphasis added). The mental limitations in the RFC state that Fauber "would be off-task

no more than ten percent of the workday and would be absent no more than once per month. The

claimant needs a low-stress job, defined as only occasional decision making or changes in work

setting." R. 14. The ALJ did not analyze or explain how these limitations account for Fauber's

depression and anxiety. He did not rely on physicians' opinions or other evidence in the record to

demonstrate that Fauber's mental impairments are accommodated by the RFC. Rather, the ALJ

simply stated: "In sum, the above [RFC] assessment is supported by the objective medical

evidence of record, the claimant's daily activities, and the opinions of the State agency

4

physicians and psychologists." R. 23. The ALJ's explanation is simply inadequate. The Fourth

Circuit recently held that "remand may be appropriate where an ALJ fails to assess a claimant's

capacity to perform relevant functions, despite contradictory evidence in the record, or where

other inadequacies in the ALJ's analysis frustrate meaningful review." Monroe, 2016 WL

3349355, at *10 (internal quotation marks omitted). Monroe emphasized that "the RFC

'assessment must include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence

(e.g., daily activities, observations).'" Monroe, 2016 WL 3349355, at *10 (citing SSR 96-8p,

1996 WL 374184). Here, the ALJ failed to conduct such an analysis. The ALJ provided a

detailed account of Fauber's medical treatment, but he did not adequately connect that treatment

and Fauber's symptoms to the limitations set forth in the RFC. See id. at *9 ("The RFC

assessment must…[s]et forth a logical explanation of the effects of the symptoms, including

pain, on the individual's ability to work.") (citing SSR 96-8p, 1996 WL 374184). The ALJ did

not make clear why he included a ten percent off-task rate and one absence per month in the RFC

and there is no way to know if this constraint was based upon Fauber's moderate limitation in

concentration[5] or her panic attacks or perhaps something else. Additionally, the ALJ did not

make clear why he chose to include a low-stress limitation in the RFC or, for that matter, why he

chose to define it as "only occasional decision making or changes in work setting." R. 14.

Without a clearer explanation for the mental limitations set forth in the RFC, this court is unable

to meaningfully review the ALJ's decision.

---

[5] Fauber's moderate limitation in concentration is discussed later in the "Failure to Address/Explain Moderate Limitations in RFC" section.

5

### 2. Inadequate Weight Explanation

The ALJ failed to adequately explain the weight given to the opinions of the State agency physicians and psychologists in the record. Concerning Fauber's physical impairments, the ALJ noted that both Robert Keeley, M.D., and John Sadder, M.D., concluded that Fauber could lift ten pounds frequently, lift twenty pounds occasionally, sit for six hours, and stand and walk for six hours during an eight-hour workday. R. 22. Regarding Fauber's mental health, the ALJ noted that both Joseph Leizer, M.D., and Louis Perrot, M.D., concluded that Fauber's mental impairments were only mild. In attributing weight to these physicians, the ALJ stated:

> [T]heir opinions do deserve some weight, particularly in a case such as this in which there exist a number of other reasons to reach similar conclusions as explained throughout this decision. **The undersigned gives the opinions of the State agency physicians and psychologists some weight in as far as they are consistent with the RFC determined by the undersigned.** However, the undersigned finds that the medical evidence of record shows that the claimant is more limited than found by the State agency consultants. The medical evidence of record shows she received continuing pain management and psychiatric treatment, which helped, but did not eliminate her symptoms.

R. 22–23 (emphasis added). The ALJ simply lumped all of the State agency consultants together and assigned them a single weight description: "some weight in as far as they are consistent with the RFC." R. 22. See Monroe, 2016 WL 3349355, at *8 (deeming such "conclusory analysis" inadequate); Mascio v. Colvin, 780 F.3d 632, 639 (4th Cir. 2015) (calling this "boilerplate" language that "gets things backwards"). The ALJ then stated that he believed Fauber to be more limited than the State agency consultants did because she received pain management and psychiatric treatment, "which helped, but did not eliminate her symptoms." R. 23. Yet, he failed to specifically point to aspects of Fauber's treatment history and explain how they conflict with

the State agency consultants' opinions.[6] Additionally, I cannot be sure which symptoms the ALJ was referring to, as Fauber had several different symptoms in connection with her pain management and psychiatric treatment. As was the case in <u>Monroe</u>, "[w]ithout more specific explanation of the ALJ's reasons" for the weight he assigned the State agency consultants, we cannot "undertake meaningful substantial-evidence review." <u>Monroe</u>, 2016 WL 3349355, at *11.

### 3. Failure to Address/Explain Moderate Limitations in RFC

The ALJ also failed to properly account for Fauber's moderate limitations in concentration and social functioning in the RFC. While the State agency psychologist found that Fauber only had mild limitations in social functioning and concentration, the ALJ found that Fauber was more limited. In step three of his opinion he stated: "The medical evidence of record shows she received continuing psychiatric treatment, which helped but did not eliminate her symptoms, which…establish moderate limitations in social functioning and concentration." R. 13. Yet, after his step three analysis, the ALJ never mentions Fauber's concentration and social functioning again. At the January hearing, the ALJ used the words "distracted" and "concentration" in his hypotheticals to the VE (R. 52–53), but he never made a logical connection in his opinion from Fauber's moderate limitation in concentration to the off-task rate in the RFC. Additionally – and perhaps more importantly – even if the ALJ implicitly addressed Fauber's moderate limitation in concentration with the off-task rate, he failed to provide any evidence or reasoning for assigning a ten percent off-task rate specifically. Given that any higher

---

[6] <u>See also</u> <u>King v. Califano</u>, 615 F.2d 1018, 1020 (4th Cir.1980)) (emphasis added) (explaining that "[i]t is well-settled that an ALJ may not reject medical evidence for no reason or for the wrong reason. Although he may, under the regulations, assign no or little weight to a medical opinion . . . he must *explain* his rationale, and it must be supported by the record."). In short, if the ALJ does not support his conclusions with specific, accurate, reasons from the record, the court cannot independently delve into the record and construct his "logical bridge" for him.

of an off-task rate would likely preclude work, explaining why ten percent was appropriate is imperative.[7]

The Fourth Circuit has held that the ALJ must translate moderate limitations in concentration, persistence, or pace into a limitation in the RFC, unless he or she provides an explanation for why such limitations would not affect the claimant's ability to work. See Mascio, 780 F.3d at 638 ("The ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order."). It is true that "Mascio does not broadly dictate that a claimant's moderate impairment of concentration, persistence, or pace always translates into a limitation in the [RFC];" however, Mascio does indeed underscore "the ALJ's duty to adequately review the evidence and explain the decision," and that "[t]he ALJ has the responsibility to address the evidence of record that supports [his] conclusion." St. Clair v. Colvin, 2015 WL 5310777, at *6 (W.D. Va. Sept. 10, 2015) (citing the magistrate judge's report and recommendation). See also McGuire v. Colvin, 131 F. Supp. 3d 559, 564 (W.D. Va. 2015) (holding that the ALJ must properly incorporate such deficiencies in the hypothetical questions posed to the VE and that those questions must be related to the medical record). In this case, the ALJ did not pose questions to the VE that related to the medical record. It is not an unreasonable presumption that the ALJ's off-task rate was intended to accommodate Fauber's moderate limitation in concentration; however, there is nothing in the ALJ's opinion that adequately explains where he derived his off-task rate. Additionally, the ALJ made no mention – either at the January hearing or in his opinion – of the impact that Fauber's moderate social functioning

---

[7] During the January hearing, the VE testified that 10% off task was not work-preclusive, but that 20% was work-preclusive. R. 52–53.

limitation may have on her RFC. See Panna v. Colvin, 2015 WL 5714403, at *3 (W.D.N.C. Aug. 31, 2015) (citing Reinhardt v. Colvin, 2015 WL 1756480, at *3 (W.D.N.C. April 17, 2015) (extending Mascio to the "similar situation" of social functioning)). Without any sort of reasoning behind the off-task designation, and no explanation as to why Fauber's moderate limitation in social functioning does not translate into work-related limitations for purposes of her RFC, this court "is left to guess as to how the ALJ concluded that Plaintiff could perform the relevant functions in light of her mental limitations." Id.

I find that the ALJ's lack of analysis in this case frustrates meaningful review and therefore requires remand for further fact finding. Upon remand, the ALJ should adequately explain the evidence that supports his RFC finding and the weight assigned to the State agency consultants. Because I find that remand is warranted based upon the foregoing reasons, Fauber's additional allegations of error will not be addressed. See Boone v. Barnhart, 353 F.3d 203, 211 n. 19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Fauber's remaining allegations of error.

## **CONCLUSION**

Collectively, these errors render the ALJ's opinion incomplete and preclude this court from conducting a meaningful substantial-evidence review. Accordingly, it is **RECCOMENDED** that Fauber's Motion for Summary Judgment be **GRANTED IN PART** and the Commissioner's Motion for Summary Judgment be **DENIED** and this case be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this opinion.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter:  August 12, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge